UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-cv-486-MOC-DSC

| | | |
|---|---|---|
| **SEMAFONE LIMITED,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **PCI PAL (U.S.), INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on Defendant's Motion to Dismiss the Complaint (Doc. No. 13). The Court heard oral argument on this matter on April 18, 2022. The matter has been fully briefed, including supplemental briefing by the parties. It is therefore ripe for review.

For the following reasons, the motion will be **DENIED**. While both parties made strong arguments about the validity of the patents at issue, Plaintiff has raised sufficiently plausible allegations to survive this motion to dismiss. Discovery is needed to determine the merits of the parties' arguments.

**I. INTRODUCTION**

This is a patent infringement suit in which Plaintiff alleges Defendant's infringement of U.S. Patent Nos. 8,750,471 (the "471 patent"), 9,858,573 (the "573 patent"), 10, 402,826 (the "826 patent"), and 11,049,108 (the "108 patent"), all titled "Signal Detection and Blocking for Voice Processing Equipment." Defendant argues that the patents are invalid and, thus, Plaintiff cannot maintain this infringement action.

According to Plaintiff, its "technologies enable its customers to process secure and compliant payments across the customers' various engagement channels, including telephone,

1

internet and other channels." (Doc. No. 1 at 3). Plaintiff undertakes an extensive description of its asserted patents in the Complaint. (Id. at 4–10). Essentially, Plaintiff asserts patents in technology for call centers which allows sensitive information to be transmitted and captured by phone during a call without requiring the call center employee to hear the sensitive information, thereby reducing privacy and security risks while allowing the information to be transmitted within the call.

In its brief, Defendant argues that Plaintiff's asserted patents essentially purport to patent the idea of a technology for call centers allowing sensitive information to be transmitted and captured by phone without requiring the call center employee to hear the sensitive information, rather than an actual specific technology that facilitates this process. (Doc. No. 14 at 10–19). Defendant argues that Plaintiff's patents are invalid under Alice Corporation Pty. Ltd. v. CLS Bank International, 573 U.S. 208, 216 (2014), and that this suit must therefore be dismissed.

## II. STANDARD OF REVIEW

   *a. Motions to Dismiss under Rule 12(b)(6)*

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must set forth enough facts, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Deciding whether a claim is plausible is a "context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

   b. *Patent-Eligible Subject Matter*

Section 101 of the Patent Act defines patent-eligible subject matter. It provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. See also Universal Secure Registry LLC v. Apple Inc., 469 F. Supp. 3d 231, 235–36 (D. Del. 2020), aff'd, 10 F.4th 1342 (Fed. Cir. 2021).

There are three judicially created limitations on the literal words of § 101. The Supreme Court has long held that laws of nature, natural phenomena, and abstract ideas are not patentable subject matter. Alice, 573 U.S. at 216. These exceptions to patentable subject matter arise from the concern that the monopolization of "the[se] basic tools of scientific and technological work" "might tend to impede innovation more than it would tend to promote it." Id. (internal quotation marks and citations omitted). "[A]n invention is not rendered ineligible for patent [protection] simply because it involves an abstract concept." Alice, 573 U.S. at 217. "Applications of such concepts to a new and useful end ... remain eligible for patent protection." Id. (internal quotation marks, alterations, and citations omitted). But "to transform an unpatentable law of nature [or abstract idea] into a patent-eligible application of such a law [or abstract idea], one must do more than simply state the law of nature [or abstract idea] while adding the words 'apply it.'" Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 72 (2012) (emphasis removed).

In Alice, the Supreme Court established a two-step framework by which courts are to distinguish patents that claim eligible subject matter under § 101 from patents that do not claim eligible subject matter under § 101.

First, in step one of the Alice framework, the court must determine whether the patent's claims are drawn to a patent-ineligible concept—i.e., are the claims directed to a law of nature, natural phenomenon, or abstract idea? Alice, 573 U.S. at 217. If the answer to this question is no, then the patent is not invalid for teaching ineligible subject matter. If the answer to this question is yes, then the court must proceed to step two.

In step two of the Alice framework, the court must consider "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Id. at 217–18 (alteration in original) (internal quotations and citations omitted).

**III. DISCUSSION**

The Court finds that Plaintiff has plausibly stated a claim of patent infringement because Defendant has not shown that Plaintiff's patents are invalid on their face under Alice. The Court finds that Defendant does raise strong arguments that Plaintiff's patents may be invalid, but the Court cannot reach that conclusion—and effectively declare Plaintiff's patents invalid—on the strength of the evidence and arguments before it, while drawing all factual inferences in Plaintiff's favor (as the Court must on this procedural posture). Claim construction and further development of a factual record is needed.

4

> *a. Defendant Cannot Satisfy Step One of <u>Alice</u> Because the Court Cannot Conclude at this time that the Patents are Drawn Only to an Abstract Idea*

The Court must first evaluate whether the patent claims are directed to a law of nature, natural phenomenon, or abstract idea in step one of <u>Alice</u>. The patents in this case address a technical solution to call center security, which cannot plausibly described as a law of nature or a natural phenomenon. Therefore, at step one the Court must consider only whether the patents seek to patent an abstract phenomenon.

Defendant raises strong arguments, in briefing and at oral argument, that the patents do just that. Defendant asserts that "[n]otwithstanding the generic nature of the components and software, the Patents contain no detailed technical disclosures instructing one how to specifically program or configure the generic components to achieve the claimed benefits." (Doc. No. 14 at 7). Defendant contends that, while Plaintiff's patent describes the concept of having a "middle-man processor" that allows a call center customer to continue their call with an agent, capturing sensitive information over the call, and blocking the agent from hearing the sensitive information, "the Patents disclose no particular hardware or software approaches for achieving this solution," relying instead on "generic processors, computer hardware and software, and unnamed 'identifiers' and 'signals'" to achieve this result. (<u>Id.</u> at 11). Defendant analogizes this case to <u>Pragmatus Telecom, LLC v. Genesys Telecomms. Labs., Inc.</u>, 114 F. Supp. 3d 192, 200 (D. Del. 2015). In <u>Pragmatus</u>, the court found that the patent's description of a more efficient call center was too abstract to adequately assert patentable subject matter under step one of <u>Alice</u>. <u>See also</u> <u>Uniloc USA, Inc. v. Big Fish Games, Inc.</u>, 320 F. Supp. 3d 1178, 1185 (W.D. Wash. 2018) (finding claims ineligible that recited generic steps of receiving a request for a service from a customer, relaying the request to a service facility, determining the components needed for the requested service, and providing the service to the customer); <u>24/7 Customer, Inc. v. LivePerson, Inc.</u>, Doc.

No. 15-cv-2897-JST, 2017 WL 2311272, at **3–4 (N.D. Cal. May 25, 2017) (invalidating claims "directed to the abstract idea of routing a call to a customer service agent based on information about the caller").

Defendant develops this argument further with respect to Plaintiff's claimed security enhancement. Defendant argues that, "[w]hile the use of a middleman call processor purports to make the call processing system more secure, the Supreme Court and Federal Circuit have consistently recognized that increased security of one's personal information—facilitated by technology—is not in itself a patentable improvement to technological functioning." (Doc. No. 14 at 17–18, citing Solutran, Inc. v. Elavon, Inc., 931 F.3d 1161, 1166–67 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 2515 (2020)); see also Card Verification Sols., LLC v. Citigroup Inc., No. 13-cv-6339, 2014 WL 4922524, at *2 (N.D. Ill. Sept. 29, 2014); Planet Bingo, LLC v. VKGS LLC, 576 F. App'x 1005, 1008 (Fed. Cir. 2014)).

Plaintiff counters that its patents assert claims of patentable subject matter. Plaintiff argues that, "[a]s the Federal Circuit stated about patents such as the Semafone patents, '[i]mproving security . . . can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem.'" (Doc. No. 17 at 18); see Ancora Techs. Inc. v. HTC Am., Inc., 908 F.3d 1343, 1348 (Fed. Cir. 2018) (citing Finjan, Inc. v. Blue Coat Sys., Inc., 879 F.3d 1299, 1304–05 (Fed. Cir. 2008)). Plaintiff continues: "[w]hether a patent claim is directed to a specific technological improvement focuses on 'the claimed advance over the prior art' and must be considered 'in light of the specification,'" and "requires the Court to address the first step in view of the state of the art at the date of invention rather than applying hindsight bias." (Id.); see Enfish, LLC v. Microsoft Corp., 822 F.3d 1327,

6

1335 (Fed. Cir. 2016); Data Engine Techs. LLC v. Google LLC, 906 F.3d 999, 1004, 1008 (Fed. Cir. 2018).

In addition, Plaintiff argues that claim construction and further development of a factual record is necessary before the Court issues a ruling potentially invalidating Plaintiff's patents. (Doc. No. 17 at 21). Plaintiff argues that for the Court to dismiss its lawsuit "requires a full understanding of the basic character of the claimed subject matter" and this implicates "resolving claim construction issues." (Id., citing MyMail, Ltd. v. ooVoo, LLC, 934 F.3d 1373, 1379 (Fed. Cir. 2019)). Plaintiff also argues this this Court has recently denied motions to dismiss in similar cases. (Id., citing Glob. Locating Sys., LLC v. Shadowtrack 247, LLC, No. 19-cv-225-MR (W.D.N.C. June 29, 2020); Eyetalk 365, LLC v. Bird Home Automation, LLC, No. 3:16-cv-680-FDW-DCK (W.D.N.C. Jan. 30, 2017); InVue Sec. Prods. v. Mobile Tech, Inc., No. 3:15-cv-610-MOC-DSC (W.D.N.C. Apr. 14, 2016)). Plaintiff asks the Court not to depart from this practice in this case. Because this lawsuit involves the technical nature of "call processors" and other technical terms from this industry, Plaintiff argues that the Court is not equipped to judge the merits of Plaintiff's asserted patents on the face of the patents alone, and without the benefit of claim construction, fact discovery, and expert discovery. (Id.).

While Defendant argues that the functions fulfilled by Plaintiff's technology could be performed by a human and therefore is an abstract concept, Plaintiff counters that this human would need to simultaneously perform numerous functions which could, in fact, only be performed by a computer technology. (Id., citing Doc. No. 14 at 17–19). Defendant argues in reply that the patents themselves claim that call center employees have fulfilled functions similar to those performed by the technology "for later criminal use." (Doc. No. 18 at 5). But this does not mean that a person could fulfill <u>all</u> these functions, nor that they could do so as reliably and cheaply as

7

Plaintiff's technology allegedly does. Indeed, while Defendant's argument goes to whether Plaintiff is asserting patents in an abstract idea (i.e., something a human could do) and is valid, the example further confirms the advantage of Plaintiff's technology since it eliminates the risk associated with having a call center employee perform this function.

Ultimately, the Court agrees with Plaintiff. While Defendant raises strong arguments that Plaintiff only purports to patent the idea of a phone system that blocks sensitive information rather than specifically disclosing <u>how</u> to do so, as the patents must do to be valid under <u>Alice</u>, the Court cannot reach this conclusion (and rule that Plaintiff's patents are invalid) on the current record and drawing all factual inferences in Plaintiff's favor (as it must on this procedural posture). Because the patents contain technical subject matter, the Court is unable to effectively evaluate them on their face alone. Claim construction and further development of the record is needed. As Plaintiff argues, this appears to be required by Federal Circuit precedent and consistent with this Court's practice in previous similar cases. Therefore, the Court finds that it cannot conclude that the patents are directed to an abstract idea at this time, meaning that Defendant has failed to satisfy step one of <u>Alice</u>.

    b. *Alternatively, Factual Issues Preclude Defendant from Satisfying Step Two of <u>Alice</u>*

Because Defendant has failed to satisfy step one of <u>Alice</u> at this time, Defendant's motion to dismiss must be denied and the Court need not proceed to step two of <u>Alice</u>. <u>Finjan, Inc.</u>, 879 F.3d at 1306. The Court finds alternatively, however, that even if Defendant had satisfied step one of <u>Alice</u>, factual issues at step two would preclude dismissal. At step two, the Court must consider whether the patents assert an "inventive concept." This involves, in part, whether the patent improves on the "prior art" of technology in the relevant area.

Citing the Federal Circuit, Plaintiff argues that "[w]hether something [was] well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual

8

determination" and that "factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101." (Doc. No. 17 at 27, citing Berkheimer v. HP Inc., 881 F.3d 1360, 1369 (Fed. Cir. 2018); Cellspin Soft, Inc. v. Fitbit, Inc., 927 F.3d 1306, 1318 (Fed. Cir. 2019)). Plaintiff points to three factual issues the Court would have to consider at step two: "(i) whether the Semafone Patents claim a technical solution to a security problem in networks and computers; (ii) whether the call processor, together with the other recited claim elements, merely cover the use of generic computer, telephone and processing equipment; and (iii) whether the technological solutions of the Semafone Patents involve more than performance of well-understood, routine, and conventional activities previously known to the callcenter industry." (Id. at 28).

The Court again agrees with Plaintiff. Determining whether the patents claim an inventive concept and the related comparison of the patents to the prior art in call center security technology are fact-intensive inquiries. On this procedural posture, the Court must draw factual inferences in Plaintiff's favor. Without development of a record and drawing inferences in Plaintiff's favor, the Court cannot definitively conclude whether the patents claim an inventive concept over the prior art in the call center technology information security field. Thus, even if Defendant could satisfy step one of Alice, Defendant cannot satisfy step two. Thus, the motion is denied alternatively on this ground.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. No. 13) is **DENIED**.

Signed: June 21, 2022

Max O. Cogburn Jr.
United States District Judge